UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

--------------------------------------------------------------- x

SUNIL KUKREJA,                                          :
                                                        :
                              Plaintiff,                :
                                                        :
                v.                                      :        24-CV-1364 (SFR)
                                                        :
SCIENTIFIC SYSTEMS COMPANY, ET AL.,                     :
                                                        :
                              Defendants.               :

--------------------------------------------------------------- x

**MEMORADUM & ORDER**

Plaintiff Sunil Kukreja brings this action against his former employer Defendant Scientific Systems Company, Inc. ("SSCI") alleging that he was subject to a hostile work environment, discrimination, and retaliation related to severe injuries suffered during his employment. Kukreja also alleges that SSCI and individual Defendants Sanjeev Seereeram, Patricia Kelly, and Raman Mehra inflicted negligent emotional distress on him during his termination process.

Defendants move pursuant to Fed. R. Civ. Pro. 12(b)(6) to dismiss most of Kukreja's claims and assert that Kukreja's proposed amendment to his complaint does not cure the deficiencies that they have identified in the claims. For the reasons explained below, I grant in part and deny in part Defendants' motion to dismiss, and grant in part and deny in part Kukreja's motion for leave to amend his complaint.

## I.    BACKGROUND

### A.  Factual Allegations

The following facts are set forth in the complaint. Kukreja was employed by SSCI from September 1, 2020 until October 14, 2022. *See* ECF No. 10, Am. Compl. ("Compl.") ¶¶ 7-8. On October 14, 2021, while on a business trip, Kukreja fell on a sidewalk and was severely injured in his left hand and spine. *See id.* ¶¶ 13-14. Kukreja notified his supervisor and Defendant Patricia Kelly, SSCI's Vice President of Human Resources, but was nonetheless asked to continue his work. *Id.* ¶¶ 16-19. Kukreja underwent surgery on his left hand on November 1, 2021. *Id.* ¶¶ 27. In November and December of 2021, while on leave, Kukreja was required to perform "significant work," had "regular long phone discussions" with his supervisor regarding work matters, and was "pressed to return to work." *Id.* ¶¶ 31-33, 36. After Kukreja returned to work, he continued to experience significant pain and his physician sent a letter to SSCI "formally limiting the use of his left hand to eight hours per day." *Id.* ¶¶ 39-40. In April 2022, Kukreja underwent surgery on his spine, during which he experienced serious complications. *Id.* ¶¶ 42-45. Afterward, during his second leave of absence, Kukreja again was required to perform work and was pressured to return to work, which he did in July 2022. *Id.* ¶¶ 50-52.

Upon Kukreja's return to work, "he was treated in an inhumane manner and subjected to harassment . . . and generally a hostile environment." *Id.* ¶ 53. Kukreja raised concerns that his "excessive hours" would exacerbate his symptoms, "but no modifications were made to his work schedule." *Id.* ¶ 54. He was also "pressured to approve and sign a report" to the "Defense Advance[d] Research Project[s] Agency," without knowledge of its contents. *Id.* ¶ 56. He refused to sign the report. *Id.*

On August 12, 2022, Kukreja was "given a negative performance evaluation" by SSCI Vice President of Engineering Sanjeev Seereeram in front of two other management employees. *Id.* ¶¶ 58-59. Seereeram revised the evaluation in September 2022 after Kukreja "raised concerns about . . . false statements" contained therein. *Id.* ¶¶ 72-73. On October 3, 2022, Kukreja requested a one-on-one meeting with Defendant Raman Mehra, President of SSCI, to "address the ongoing harassment . . . [,] and his fears that he was experiencing discrimination and retaliation." *Id.* ¶ 77. On October 5, Defendant Mehra responded that "he wanted two others to join the meeting." *Id.* ¶ 78. Kukreja responded that he "was uncomfortable meeting with multiple individuals," raised concerns regarding disability discrimination and retaliation, and told Defendant Mehra that he would seek legal advice before having the suggested group meeting. *Id.* ¶ 79. On October 14, 2022, SSCI terminated Kukreja." *Id.* ¶ 82.

## B. Procedural History

Kukreja filed his claims with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and the Equal Employment Opportunity Commission ("EEOC") on August 7, 2023. *Id.* ¶ 3. He obtained releases of jurisdiction from the CHRO on July 24, 2024, and the EEOC on August 6, 2024. *Id.* Kukreja filed his complaint with this Court on August 27, 2024 and his amended complaint on September 10, 2024. *See* ECF Nos. 1, 10.

Kukreja alleges thirteen separate claims. *See* Am. Compl. 17-23. In particular, he alleges disability discrimination and retaliation under the Americans with Disabilities Act ("ADA") and the Connecticut Fair Employment Practices Act ("CFEPA") (Counts 1, 2, 3, 4), retaliation and interference under the Family and Medical Leave Act ("FMLA") (Counts 5, 6), free speech retaliation under Conn. Gen. Stat. § 31-51q (Count 7), workers' compensation

retaliation under Conn. Gen. Stat. § 31-290 (Count 8), failure to engage in interactive process and accommodate under ADA and CFEPA (Counts 9, 11), hostile work environment under ADA and CFEPA (Counts 10, 12), and negligent infliction of emotional distress (Count 13). *Id.* Kukreja alleges the first twelve Counts solely against Defendant SSCI, and the final Count for negligent infliction of emotional distress against Defendant SSCI and the three individual Defendants. *Id.*

Defendants filed their motion to dismiss on November 9, 2024. ECF No. 13. After Defendants filed their motion, Kukreja moved for leave to amend his complaint to clarify the allegations and factual underpinnings of Counts 2, 4, 6, and 13, remedy "minor typographical errors," and correct "references to the year 2023 which should have been referenced as 2022." ECF No. 18. On December 2, 2024, Kukreja filed a memorandum opposing Defendants' motion to dismiss. ECF 20. Defendants assert that Kukreja's proposed amendments do not remedy the deficiencies they have identified in the claims. ECF No. 25. I heard oral argument on these motions on March 4, 2025. ECF No. 38.

## II.  DISCUSSION

The standard governing motions to dismiss under Rule 12(b)(6) is well established. A complaint may not survive unless it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018); *Lapaglia v. Transamerica Cas. Ins. Co.*, 155 F. Supp. 3d 153, 155-56 (D. Conn. 2016). Although this "plausibility" requirement is "not akin to a probability requirement," it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. The court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine

whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). However, the court is not bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions," *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008).

### A. ADA and CFEPA Discrimination and Retaliation Claims

In Counts 1 through 4 of the complaint, Kukreja alleges he was subject to discrimination and retaliation by Defendant SSCI under the ADA and CFEPA. Am. Compl. 17-18. Defendants do not dispute these allegations; instead, they argue that the underlying events, except for Kukreja's termination, are time barred and must be dismissed. ECF No. 13-1, Defs.' Mem. of Law in Supp. of Defs.' Mot. to Dismiss ("Defs.' Mem.") 5-9. Kukreja responds that the claims in Counts 1 through 4 are based solely on Kukreja's termination, and that all other allegations relating to harassment and discrimination in his complaint are "background facts . . . necessary to support his claims." ECF No. 19, Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Stay Disc. ("Pl.'s Opp'n to Stay") 3-4.

Under both the ADA and CFEPA, before filing suit in court, an aggrieved person must first exhaust administrative remedies by filing a charge with the CHRO and the EEOC. *See* Conn. Gen. Stat. § 46a-82(f)(2); 42 U.S.C. § 12117(a). A claim not filed with the CHRO and EEOC within 300 days of the alleged discriminatory acts is time barred. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) ("*Morgan*"). The 300-day limitations period does not, however, bar an employee from using the prior time-barred acts as background evidence in support of a timely claim. *Id.* at 113. Courts in this District have applied this holding to allow plaintiffs to plead untimely acts as background evidence for timely acts in similar situations. *See, e.g.*, *Asante-Addae v. Sodexo, Inc.*, No. 3:13-CV-00489 (VLB), 2015 WL

1471927 (D. Conn. Mar. 31, 2015) (allowing consideration of untimely acts as background evidence in support of plaintiff's wrongful termination claim).

Kukreja filed charges of discrimination and harassment with the EEOC and CHRO on August 7, 2023. Am. Compl. ¶ 3. The parties agree that pursuant to the 300-day limitations period, only events occurring on or after October 11, 2022 are considered timely, and any acts occurring before that cannot be the basis for ADA or CFEPA claims.

Here, Kukreja's termination is the only timely basis for the claims in Counts 1 through 4. The time-barred acts included in Counts 1 through 4—for example that SSCI required Kukreja to work "excessive hours" and failed to provide short-term disability paperwork, *see* Am. Compl. 17-18—are background evidence related to Kukreja's termination. I agree with Kukreja that under *Morgan*, he may include these time-barred acts of alleged harassment and retaliation as relevant background for the termination claim, although not as independent grounds for recovery.

I therefore DENY Defendants' Motion to Dismiss as to Counts 1 through 4.

## B. FMLA Interference Claim

In Count 6 of the complaint, Kukreja alleges that SSCI interfered with his rights under the Family and Medical Leave Act ("FMLA") to take leaves of absence for medical treatment by pressuring him to return to work, requiring him to work during his leaves of absence, and failing to provide the appropriate paperwork to apply for short-term disability benefits. *See* Am. Compl. 19. Defendants argue, in effect, that SSCI could not have interfered with Plaintiff's FMLA rights because Kukreja took eighteen weeks of leave over the course of two years. Defendants assert that the record does not indicate that "Plaintiff requested FMLA, that

Plaintiff was denied FMLA leave, or that Plaintiff was not able to return to his job after either of his leaves." *See* Reply Br. Further Supp. Defs.' Mot. Dismiss ("Defs.' Reply") 4-5.

To prevail on an FMLA interference claim, a plaintiff must establish: "1) that she is an eligible employee under the FMLA; 2) that the defendant is an employer as defined by the FMLA; 3) that she was entitled to take leave under the FMLA; 4) that she gave notice to the defendant of her intention to take leave; and 5) that she was denied benefits to which she was entitled under the FMLA." *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016). The FMLA protects three types of activity: (1) an employee's exercise of or attempts to exercise rights provided under the FMLA, (2) an employee's complaint or opposition to any practice made unlawful by the FMLA, and (3) an employee's participation or provision of testimony in any proceeding relating to any FMLA-protected right. 29 U.S.C. § 2615; 29 C.F.R. § 825.220(a). Defendants do not dispute that Kukreja has adequately alleged that he was an eligible employee, that SSCI is an employer under FMLA, that Kukreja was entitled to leave under FMLA, and that he gave notice to SSCI of his intention to take leave. The question is therefore whether Kukreja has adequately alleged that SSCI denied Kukreja benefits to which he was entitled under FMLA.

Courts in this District have concluded that, even if FMLA leave is granted, employees can sufficiently allege denial of their benefits when their employers require them to work while on FMLA leave. *See, e.g.*, *Landolfi v. Town of N. Haven*, No. 3:22-CV-770 (VAB), 2024 WL 3925332, at *6 (D. Conn. Aug. 23, 2024) (denying summary judgment on FMLA interference claim where "while [Plaintiff] was not impeded from taking her 2019 FMLA leave *ex ante*, the actual amount of work she had to perform, while on leave, and whether that amount of work interfered with her FMLA leave is disputed") (citations omitted); *see also Supino v.*

*SUNY Downstate Med. Ctr.*, No. 19-CV-1315 (ENV/VMS), 2021 WL 4205181, at *12 (E.D.N.Y. Mar. 15, 2021) (concluding that plaintiff had "sufficiently alleged a plausible claim of FMLA interference" where she "was asked to overturn an IRB vote over the phone while on intermittent leave despite informing [her employer] beforehand that she did not feel well enough to take on such a task").The conduct alleged here is similar to *Landolfi*. Kukreja alleges that SSCI required him to perform "significant work" during both of his FMLA leave periods. *See* Am. Compl. ¶¶ 36, 50-51. SSCI may contest these factual allegations or contest whether the work performed by Kukreja during his leave rose to the level of "interference" under the FMLA. But, for the purpose of the motion to dismiss, Kukreja has alleged sufficient facts to state a plausible claim that SSCI denied Kukreja his benefits under FMLA by requiring him to work throughout his FMLA leaves.

I therefore DENY the motion to dismiss with regard to Count 6.

## C. Free Speech Retaliation Claim

In Count 7, Kukreja alleges that he was subjected to "discipline and discharge," Am. Compl. 20 in violation of Conn. Gen. Stats. § 31-51q, after his refusal to sign a "potentially false" report to the Defense Advanced Research Projects Agency (a federal government agency). *See* Am. Compl. ¶ 56. Defendants argue that Kukreja's refusal to sign the report is "a prototypical example of a personal employment grievance" that "fails to address any 'broader public purpose'" and is "related to matters of purely private concern" that "did not constitute protected speech under § 31-51q." Defs.' Mem. 14; *see also* Defs.' Reply 5.

To state a claim under Conn. Gen. Stats. § 31-51q, a plaintiff must allege four elements: "(1) that he engaged in constitutionally protected speech, (2) that his employer took an adverse action against him, . . . (3) that there was a causal relationship between the protected activity

and the adverse action," and (4) that "the exercise of his First Amendment rights did not substantially or materially interfere with his bona fide job performance or with his working relationship with his employer." *Karagozian v. Luxottica Retail N. Am.*, 147 F. Supp. 3d 23, 35 (D. Conn. 2015). Speech on a matter of public concern relates "to any matter of political, social, or other concern to the community." *Connick v. Myers*, 461 U.S. 138, 146 (1983); *Garcia v. State Univ. of New York Health Sci. Ctr.*, 280 F.3d 98, 105 (2d Cir. 2001). Section 31-51q is

> not limited to freedom of speech in the public arena. Nevertheless, the statute does not protect all speech. The statute applies only to expressions regarding public concerns that are motivated by an employee's desire to speak out as a citizen. The court must consider, therefore, whether [the plaintiff] spoke as a citizen upon matters of public concern or instead as an employee upon matters only of personal interest. The Connecticut Supreme Court has concluded that it is within the province of the trial court to determine, as a matter of law, which topics are considered to be of public concern. The resolution of whether an employee's statements address such a topic is, however, within the province of the jury, to be determined by looking to the content, form and context of the particular statements in question.

*Campbell v. Windham Cmty. Mem. Hosp.*, 389 F. Supp. 2d 370, 381-82 (D. Conn. 2005) (citations and internal quotation marks omitted).

When employees speak out about potentially illegal activities of their employers that affect third parties or the community at large, courts have held that public concerns are implicated. *See Trusz v. UBS Realty Investors, LLC,* No. 3:09-cv-268 (JBA), 2010 WL 1287148, at *9 (D. Conn. Mar. 30, 2010). False reporting to government entities and violations of federal law can be matters of public concern, and refusing to make false statements can be protected speech on a matter of public concern. *See Raible v. Essex Yacht Club, Inc.*, No. CV030564783S, 2003 WL 22133986, at *4 (Conn. Super. Ct. 2003) (raising concerns about false reporting to IRS was protected speech); *Brown v. Off. of State Comptroller*, 211 F. Supp.

3d 455, 462, 474 (D. Conn. 2016); *Jackler v. Byrne*, 658 F.3d 225, 241 (2d Cir. 2011) (holding that an employee "has a First Amendment right . . . to refuse to make a statement he believes is false").

Here, as Defendants observe, Kukreja has not alleged that the report he was pressured to sign in fact contained any false information, only that it contained "potentially false" information and that Kukreja believed it was "perhaps illegal." *See* Am. Compl. ¶ 56; Defs.' Mem. 14. Kukreja alleges he "had no personal knowledge" of the report, does not indicate whether he eventually signed the report, and fails to provide any additional information or context. *See* Am. Compl. ¶ 56.

However, despite the lack of detail provided in the complaint, Kukreja has alleged that he expressed opposition to signing the report, and that his opposition related to his concern about reporting falsehoods to the federal government rather than matters of only personal interest. Refusing to report false information to a federal agency is constitutionally protected speech of public concern. Moreover, the fact that Kukreja allegedly made a statement privately to his employer rather than publicly does not render the speech unprotected. *See Campbell*, 389 F. Supp. 2d at 382 ("Furthermore, the fact that Campbell expressed her concerns privately rather than publicly does not cause her to relinquish protection of First Amendment-protected speech."). I conclude therefore that Kukreja has alleged a plausible claim under § 31-51q. SSCI can contest the factual basis of Kukreja's assertions at a later stage of the case. *See Campbell*, 389 F. Supp. 2d at 382 ("The resolution of whether an employee's statements address such a topic is, however, within the province of the jury, to be determined by looking to the content, form and context of the particular statements in question.").

I therefore DENY the motion to dismiss as to Count 7.

**D.  ADA and CFEPA Failure to Accommodate and Engage in Interactive Process Claims**

In Counts 9 and 11, Kukreja alleges that SSCI failed to make accommodations for his disability and failed to engage in an interactive process regarding such accommodations. In his amended complaint, Kukreja suggests that he requested accommodations sometime in July 2022. Am. Compl. ¶¶ 52, 54. Defendants argue that this claim is time-barred under the ADA and CFEPA. Defs.' Mem. 5; Defs.' Reply 6. Kukreja counters that SSCI never denied the requests for accommodation, and therefore that the 300-day limitations period was not triggered on these claims. Pl.'s Opp'n to Stay 13.

To demonstrate failure to accommodate under the ADA, a plaintiff must show that, "(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *McMillan v. City of New York*, 711 F. 3d 120, 125-26 (2d Cir. 2013). An employer cannot refuse to make an accommodation that it was never asked to make. *Dooley v. JetBlue Airways Corp.*, 636 Fed. Appx. 16, 18-19 (2d Cir. 2015) (citing *Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 129 (1st Cir. 2009)). "An employer's duty to accommodate an employee's disability is ordinarily activated by a request from the employee, and the request must be sufficiently direct and specific to give the employer notice of the needed accommodation." *Id.*

To show that an employer failed to participate in the interactive process for a reasonable accommodation under the ADA, the employee must demonstrate that: (1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for

his or her disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith. *Floyd v. Lee,* 968 F. Supp. 2d 308, 327 (D.D.C. 2013).

Under either test, the date that an employer rejected the request for accommodation is the critical event for the purpose of timeliness; rejection of a request to accommodate is a discrete act with its own 300-day requirement for filing before the EEOC. *See Graham v. Women in Need, Inc.*, No. 13 Civ. 07063(LGS), 2014 WL 2440849, at *3 (S.D.N.Y., May 30, 2014). This is the only issue the parties dispute with respect to this claim; therefore the key inquiry here is whether SSCI denied Mr. Kukreja's requests for accommodation or efforts to initiate process outside the limitations period—in other words, before October 11, 2022—or whether Mr. Kukreja made a request that was denied only when he was fired, which would be after October 11, 2022 and therefore not time-barred.

 Kukreja asserts that a request for accommodation was made via a letter from his physician, *see* Am. Compl. ¶ 40, and that in July 2022 he "raised concerns regarding the excessive hours and the exacerbation to his symptoms" caused by these hours, *see* Am. Compl. ¶ 54. Kukreja argues that "the only logical inference" is that Kukreja had "sought an adjustment to his hours" and that "Defendants were acting in bad faith by not engaging in the interactive process as required." Pl.'s Opp'n to Stay 14. Defendants counter that "the employer's alleged conduct, as pled, of continuing to pressure Plaintiff to work long hours . . . [should] be read as a 'denial' well outside of the limitations period." Defs.' Reply 8.

At the motion to dismiss stage, I must make "all reasonable inferences in [the plaintiff's] favor," *Faber* 648 F.3d at 104, and cannot draw such inferences in Defendant's

favor. Here, Mr. Kukreja has alleged that he asked for accommodations at least two times and has not alleged any outright denial of those requests that would trigger the 300-day limitations period.

Moreover, the requirement to file with the EEOC within 300 days is an affirmative defense. *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 491 (2d Cir. 2018). Affirmative defenses are "generally not appropriate for a motion to dismiss." *Theophilous v. Bridgeport Mental Health Ctr.,* No. 3:18-CV-02151 (VAB), 2020 WL 4449949, at *8 (D. Conn. Aug. 2, 2020) (internal quotation marks omitted). Because a timeliness analysis "is generally riddled with questions of fact which the Defendants must establish in order to bar Plaintiffs' claims, a defendant may only raise such a defense in a pre-answer motion to dismiss where the dates in a complaint clearly show that an action is barred by a statute of limitations." *Id.* (citation and internal quotation marks omitted); *see also OBG Tech. Servs., Inc. v. Northrop Grumman Space & Mission Sys. Corp.*, 503 F. Supp. 2d 490, 503 (D. Conn. 2007) ("A statute of limitations defense . . . requires a factual inquiry beyond the face of the complaint."). Here, the date when Kukreja's request for accommodation was denied, if it was denied, is unclear on the face of the complaint.

For purposes of the motion to dismiss, I must accept Kukreja's well pleaded facts and take the inferences in his favor, and therefore DENY the motion to dismiss with regard to Counts 9 and 11.

### E. ADA and CFEPA Hostile Work Environment Claims

In Counts 10 and 12, Kukreja alleges that SSCI subjected him to a hostile work environment as a result of his injuries. *See* Am. Compl. 21-22. Defendants argue that this claim is time barred because every underlying act, except for Kukreja's termination, occurred outside

the 300-day limitations period. *See* Defs.' Mem. 6-8. Kukreja argues that the acts underlying the hostile-work-environment claim constitute a continuing violation and are therefore not time barred. *See* Pl.'s Opp'n to Stay 4-5. Defendants respond that the continuing violation doctrine does not apply because all of the facts underlying the hostile work environment claim, save Kukreja's termination, occurred outside the statutory period, and "a discriminatory termination claim cannot 'serve as the foundation for a continuing violation theory of a hostile work environment' as '[a]n employee's termination is the paradigmatic 'discrete act' that cannot be part of a hostile work environment claim.'" Defs.' Mem. 8.

"Because a constellation of events over time can collectively give rise to a hostile environment claim, if an act contributing to the [hostile environment] occurs within the filing period, the hostile work environment claim is timely, and a factfinder can hold a defendant liable for the entire time period of the hostile environment, including the period falling outside of the limitations period." *King v. Aramark Servs. Inc*., 96 F.4th 546, 560 (2d Cir. 2024) (internal quotation marks omitted). As Kukreja observes, *King* stated: "[W]e have never held that a discrete act that furthers a discriminatory policy and occurs within the limitations period cannot render timely a hostile environment claim based upon that policy. Today, we make it clear that such a discrete act can do so." *Id.* at 560. In other words, the *King* court held that timely discrete acts, including termination, can serve as an anchor for otherwise untimely conduct that, taken together, constitute a hostile work environment. *King*, 96 F.4th at 560.

Here, Kukreja alleges that SSCI created a hostile work environment by, among other things, overworking him, humiliating him, and delaying his disability paperwork, eventually culminating in his termination. *See* Am. Compl. ¶¶ 37-40, 48, 53-55, 59-61, 82. The parties agree that these alleged acts were outside the limitations period, except for Kukreja's

termination, which occurred within the limitations period. Under *King*, I may consider the earlier acts alleged by Kukreja because they are a part of the hostile work environment that led ultimately to his termination. Taking Kukreja's factual allegations as true at the motion to dismiss stage, Kukreja has alleged sufficient facts in his complaint to plausibly state a hostile work environment claim, with the allegations about various events regarding SSCI's actions toward Kukreja anchored by Kukreja's termination. *Theophilous*, 2020 WL 4449949, at *9 (D. Conn. Aug. 2, 2020) ("Whether the alleged events constitute a continuing pattern of hostility triggering the continuing violation doctrine or, instead, are discrete events is a question better addressed on a summary judgment motion after discovery.").

I therefore DENY the Motion to Dismiss Counts 10 and 12.

**F. Negligent Infliction of Emotional Distress**

In Count 13, Kukreja alleges that his termination was unreasonable and calculated to cause distress and that all four Defendants are therefore liable for negligent infliction of emotional distress (NIED). *See* Am. Compl. 22. Defendants argue that Kukreja fails to clear the high bar for NIED set by Connecticut law. *See* Defs.' Mem. 16-19.

Courts within this District have often resolved questions regarding negligent infliction of emotional distress at the motion to dismiss stage, given the very limited circumstances under which the Connecticut Supreme Court has permitted such claims to proceed. *See, e.g., Pecoraro v. New Haven Reg.*, 344 F. Supp. 2d 840, 847 (D. Conn. 2004). Under Connecticut law, the plaintiff must prove: "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." *Grasso v. Conn. Hospice, Inc.*,

54 A.3d 221, 229 (2012). In the employment context, a claim of NIED arises only when it is based on "unreasonable conduct of the defendant in the termination process"; it cannot arise out of conduct that occurs in continued employment. *Id.* (citing *Perodeau v. Hartford*, 259 Conn. 729 (2002)). Moreover, the "tort of negligent infliction of emotional distress focuses on the manner of discharge; whether the employer's conduct in the termination was unreasonable, not whether the termination of employment was unreasonable." *Mercado v. PRRC, Inc.*, No. 3:15CV637 (JBA), 2015 WL 6958012, at *5 (D. Conn. Nov. 10, 2015).

The "termination process" generally includes the period leading up to and immediately following termination. *Tomick v. United Parcel Serv., Inc.*, 511 F. Supp. 2d 235 (D. Conn. Sept. 25, 2007). The termination process generally does not include events weeks or months before termination of employment. *Tracy v. New Milford Pub. Schs.*, 922 A.2d 280, 288 (App. Ct. Conn, 2007). This is true even where the events leading up to termination include investigations or other acts that are linked to the final termination. *Kleftogiannis v. Inline Plastics Corp.*, 411 F. Supp. 3d 216, 229 (D. Conn., 2019) (investigation leading to termination not part of termination process for NIED analysis). Moreover, to "rise to the requisite level [of emotional distress], a plaintiff must allege more than mere termination." *Asante-Addae v. Sodexo, Inc.*, No. 3:13-cv-00489 (VLB), 2015 WL 1471927 (D. Conn. Mar. 31, 2015). Rather, he must allege that the actual termination was . . . done in an inconsiderate, humiliating, or embarrassing manner." *Id.*; *see also Mumma v. Pathway Vet All., LLC.*, 648 F. Supp. 3d 373, 400 (D. Conn. 2003). Under Connecticut law, NIED does not require extreme and outrageous conduct, but it does "require a showing that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, it if were caused might result in illness or bodily harm." *Mercado*, 2015 WL 6958012, at *5. Examples

of unreasonable employer conduct in the termination process include an employer gratuitously calling the police, who then "swarmed" and handcuffed the plaintiff in front of his coworkers, *see id.* at 6, and an employer "needlessly publicizing [the plaintiff's] firing and falsely accus[ing] him of dishonesty," *Mulkin v. Anixter, Inc.*, No. 3:03-cv901 (RNC), 2004 WL 288806, at *2-3 (D. Conn. Feb. 10, 2004).

Kukreja's Amended Complaint alleges little in the way of specific facts that support the NIED claim. Count 13 says that "Defendants engaged in a concerted effort to harass Plaintiff and remove him from his employment" and that "Defendants knew or should have known that their treatment of and conduct toward Plaintiff as described above, would cause Plaintiff emotional distress. The resulting emotional distress was foreseeable. The termination process began long before the final announcement of termination." Am. Compl. 23. Other than these assertions, and the general allegations of harassment and mistreatment throughout, the Amended Complaint does not specifically address the grounds for the NIED claim. Although at the motion-to-dismiss stage I am bound to "draw all reasonable inferences in [Kukreja's] favor" and assume as true "all well-pleaded factual allegations" on the face of Kukreja's complaint, *see Faber*, 648 F.3d at 104, I am not bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008). Kukreja's vague and conclusory allegations in Count 13, unsupported by specific details, are therefore insufficient to withstand a motion to dismiss.

I therefore GRANT the motion to dismiss as to Count 13.

## III.    <u>MOTION FOR LEAVE TO AMEND COMPLAINT</u>

Kukreja seeks to amend his amended complaint to clarify the basis of Counts 2, 4, 6, and 13, in response to Defendants' motion to dismiss, and to make other technical changes.

*See* Memo. of Law in Support of Pl.'s Mot. Leave to Amend Compl. 1. Defendants oppose Kukreja's motion because they allege Kukreja's additions regarding Count 13 would be futile. *See* Defs.' Memo. Law Opp'n Pl.'s Mot. Leave to Amend Compl. 2-3.

Federal Rule of Civil Procedure 15(a) allows parties to amend pleadings once as a matter of course, and thereafter "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(1)-(2). Courts should "freely give leave when justice so requires." *Id.* A district court may deny leave to amend for "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 192 (1962) (internal quotation marks omitted). The non-moving party bears the burden of showing prejudice, bad faith, or futility of the amendment. *See Perez v. Escobar Constr., Inc.*, 342 F.R.D. 378, 380 (S.D.N.Y. 2022). "Amendment is futile when the proposed amended complaint would not survive a Rule 12(b)(6) motion to dismiss." *Florence v. Seggos*, No. 21-834, 2022 WL 2046078 at *2 (2d Cir. 2022) (citing *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002)).

Kukreja attempts to strengthen the basis for the NIED claim in his Proposed Second Amended Complaint. *See* Proposed Second Amended Complaint (Pro. Second Am. Compl.), ECF No. 18-2. In the proposed amendments, Kukreja alleges that he was terminated by letter, that he was "extremely upset" because he could not raise his concerns, that the "letter included a personal attack on Plaintiff with many defamatory remarks about him," and that this method of firing, without allowing for any opportunity to respond to his employer's concerns, is "against standard business practice." Pro. Second Am. Compl. ¶ 82. Kukreja also alleges that

18

Defendants ignored his efforts to engage and resolve the situation, that he was in an already "weakened emotional and physical state given the symptoms of his disabilities and the hostile work environment" at SSCI, and that "Defendants knew or should have known that their treatment of and conduct toward Plaintiff . . . would cause Plaintiff emotional distress." *Id.* at 26.

Kukreja asserts that "[t]he termination process began long before the final announcement of termination." *Id.* Kukreja alleges that he was terminated "by way of a letter sent to his home via federal express" on October 14, more than a week after his final exchange with Mehra. *Id.* at ¶ 82. Kukreja alleges that other acts also preceded his termination, including a negative employee performance evaluation on August 12, 2022, efforts by Defendant Kelley to "solicit negative information regarding Plaintiff" in the days prior to the August 12 evaluation, and efforts by SSCI to learn about what he was working on "as [if] planning for Plaintiff's termination" after returning from his first surgery in November, 2021. *Id.* ¶¶ 58, 67, 75, 27. But these acts proceeded Mr. Kukreja's termination by weeks or months. *Id.* Courts in Connecticut have generally held that the "termination process" does not include the "weeks and months" prior to an employee's termination, *see Tracy,* 922 A.2d at 288, and that even arguably related proceedings like misconduct investigations are not considered part of the termination process for the purposes of NIED analysis, *see Kleftogiannis,* 411 F. Supp. 3d at 229. I find therefore that, for the purpose of the NIED analysis, the termination process involved the letter sent to Kukreja's home and not the events in the weeks preceding that act.

Kukreja has not included the termination letter as an exhibit with his complaint, but he says it was "sent to his home via federal express." Pro. Second Am. Compl. ¶ 82. Kukreja alleges that the letter "included a lengthy and severe personal and professional attack directed

to Plaintiff," accusing him "for the first time of engaging in a 'pattern of behavior' that included being 'unprofessional,' 'insubordinate,' and 'non-cooperative.'" *Id.* at 25. Kukreja says the letter also contained allegations that Kukreja's actions were "detrimental to company morale and employee relations" and that he had "refused to engage" with SSCI to resolve those issues, without mention of his efforts to meet with Mr. Mehra. *Id.* Kukreja concludes that the letter "was designed to shock Plaintiff," that it did so, and that "Plaintiff was already in a weakened emotional and physical state given the symptoms of his disabilities and the hostile work environment to which he had been subjected." *Id.* at 26.

Kukreja alleges that he was terminated by way of a letter, sent to his home, which contained the reasons for his termination as understood by his employer. Unlike an employee being "swarmed" and handcuffed by police, *Mercado*, 2015 WL 6958012, at *6, or an employee being publicly fired and slandered, *see Mulkin*, 2004 WL 288806, at *3, a letter sent to an employee's home explaining the reasons for his dismissal is not an inconsiderate, humiliating, or embarrassing way to terminate an employee. The letter was opened by Mr. Kukreja in private, and he does not allege that SSCI publicly slandered him or promoted his firing. On these facts, Kukreja has failed to make a showing "that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, it if were caused might result in illness or bodily harm." *Mercado*, 2015 WL 6958012, at *5. The letter and the allegations therein were no doubt distressing to Kukreja, but given the high bar set by Connecticut courts regarding NIED in the workplace, they did not rise to the level of NIED. I conclude therefore that it would be futile to allow Kukreja to amend Count 13 of his complaint.

With respect to Kukreja's remaining proposed amendments, I find that they do not raise new claims, do not substantially change Mr. Kukreja's theory of the case, and will not substantially add to the length or complexity of the trial. Allowing these amendments will not unduly delay this litigation or prejudice Defendants. I therefore GRANT in part and DENY in part Kukreja's Motion for Leave to Amend his Complaint. Kukreja may file his proposed Second Amended Complaint without Count 13 on or before **Monday, June 9, 2025.** Because Count 13 was the only Count with claims against the individual Defendants, I further instruct the Clerk of Court to terminate Defendants Raman Mehra, Sanjeev Seereeram, and Patricia Kelly from this action.

**SO ORDERED.**

New Haven, Connecticut

May 30, 2025

> /s/Sarah F. Russell
> SARAH F. RUSSELL
> United States District Judge